**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

<table>
<tr>
<td>

TARA SIMONE BROWN,
　　　　　　　　*Plaintiff-Appellee,*

v.

ROBERT GILMORE, individually and in
his capacity as a police officer of
the City of Myrtle Beach, South
Carolina; BRIAN PINA, individually
and in his capacity as a police
officer of the City of Myrtle Beach,
South Carolina,
　　　　　　　*Defendants-Appellants,*

and

CITY OF MYRTLE BEACH, SOUTH
CAROLINA,
　　　　　　　　　　*Defendant.*

</td>
<td>No. 01-1749</td>
</tr>
</table>

Appeal from the United States District Court
for the District of South Carolina, at Florence.
C. Weston Houck, District Judge.
(CA-00-1588)

Argued: December 3, 2001

Decided: January 23, 2002

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge,
and Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

---

Reversed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Niemeyer and Judge Goodwin joined.

### COUNSEL

**ARGUED:** Cynthia Graham Howe, VAN OSDELL, LESTER, HOWE & JORDAN, P.A., Myrtle Beach, South Carolina, for Appellants. Joshua Norris Rose, ROSE & ROSE, P.C., Washington, D.C., for Appellee. **ON BRIEF:** James B. Van Osdell, VAN OSDELL, LESTER, HOWE & JORDAN, P.A., Myrtle Beach, South Carolina, for Appellants. John R. Harper II, JOHN R. HARPER II, ATTORNEY AT LAW, P.A., Columbia, South Carolina, for Appellee.

---

### OPINION

WILKINSON, Chief Judge:

Plaintiff Tara Brown brought a 42 U.S.C. § 1983 action alleging false arrest and use of excessive force in violation of the Fourth Amendment during her arrest for violating the City of Myrtle Beach's disorderly conduct ordinance. The district court denied the officers' motion for summary judgment based on qualified immunity. Because the record reveals no violation of Brown's Fourth Amendment rights, we hold that the district court erred in denying summary judgment. Any other ruling would undermine the ability of local governments to maintain civil peace.

I.

Plaintiff Tara Brown went to visit her relatives in Myrtle Beach, South Carolina during Memorial Day weekend 1998. That weekend was the Atlantic Beach Biker Festival. The Festival draws numerous bikers and others to Myrtle Beach. The City of Myrtle Beach requests an extraordinary law enforcement presence for the weekend and the State of South Carolina assigns personnel from various law enforcement agencies to assist the City with crowd control and other issues. Defendant Officer Pina was a patrol officer with the Myrtle Beach Police Department at the time of the alleged incident. Defendant Officer Gilmore was a patrolman first class.

On the evening of May 23, 1998, Brown, accompanied by four female friends and relatives, was driving her car in downtown Myrtle

Beach. At approximately 10:40 p.m., Brown was stopped in traffic when a car backed into her vehicle and caused an accident. Officer Pina and Officer Travis Norris (a Department of Natural Resources officer), were on patrol in the area and arrived within minutes. Officers Pina and Norris first confirmed that no one needed immediate medical attention and then remained at the accident site until a traffic officer arrived to handle the accident. Officer Gilmore was on traffic duty that evening and was dispatched to the accident at 11:19 p.m. He arrived at the scene at 11:23.

Officer Gilmore and Brown, not surprisingly, describe the ensuing events in different terms. As Officer Gilmore describes the incident, the two cars were blocking the entire north lane of a "main artery into the downtown area of Myrtle Beach." Officer Gilmore made sure that no one was hurt and then obtained drivers licenses, registration and insurance information from the two drivers. Thereafter, Officer Gilmore asked both drivers to move their cars off the main street onto a side street. The other driver immediately responded and moved her car. Officer Gilmore claims that Brown ignored him and instead asked Officer Pina why he could not handle the accident. Officer Gilmore asked Brown two more times to move her car, but she continued to ignore him. Officer Gilmore thus asked again, more loudly. Brown began to yell and curse and stated "I'll move my car when I'm damn good and ready." Officer Gilmore then asked Officer Pina to place Brown under arrest for disorderly conduct. Officer Pina asked Brown to turn around and put her hands behind her back. He then escorted her to his patrol cruiser. Officer Pina handcuffed Brown and asked her to get in the cruiser. Brown refused and put up such a scuffle that she kicked off one of her sandals. Officer Pina went around to the other side of the cruiser and pulled Brown through the back seat to get her into the cruiser.

As Brown describes the incident, she was speaking with officers Pina and Norris when Officer Gilmore came up behind her. She turned around and noticed that he was yelling and waving his arms, although she did not have a chance to focus on what he was saying. As he drew near, she realized Officer Gilmore was talking to her. Brown asked Officer Gilmore why he was yelling and if he could stop yelling. Officer Gilmore responded by asking Officer Pina to "take her to jail." Brown claims she did not understand what he was saying

and was not aware that he directed her to move her car. After her arrest, Brown was upset. She was handcuffed by Officer Pina, dragged into a cruiser, and was charged with violating the local disorderly conduct ordinance. Brown contends she kicked off her shoe to avoid falling because it had become tangled while she was being dragged by Officer Pina.

It is undisputed that Brown was booked on the disorderly conduct charge and was released on bond shortly after her arrest. Specifically, Brown was charged with violating the City of Myrtle Beach Ordinance § 14-61 which provides that:

> It shall be unlawful for any person to commit any breach of the peace, conduct himself in a disorderly manner, be publically drunk or under the influence of intoxicating beverages, be loud and boisterous or conduct himself in such a manner as to disturb the peace and quiet of the public.

On May 23, 2000, Brown sued Officers Gilmore and Pina as well as the City of Myrtle Beach based upon her May 23, 1998 arrest. Brown alleged violations of 42 U.S.C. § 1983 and several state law claims. The defendants denied the allegations and moved for summary judgment. The officers asserted that they had probable cause to arrest Brown for disorderly conduct and that they were entitled to qualified immunity as to the § 1983 claims.

On May 31, 2001, the district court issued an order denying the defendants' motion for summary judgment on Brown's Fourth Amendment claims.[1] The court acknowledged that the excessive force claim had not been clearly pled, but thought the officers had been placed on notice of the claim from factual averments in the amended complaint. The court then went on to consider whether the officers had qualified immunity as to the false arrest claim. The court recognized that if the facts of the case were undisputed, it would "apply[ ] the clearly established law to determine whether a reasonable person in the officers' position would have known that his actions violated

---

[1]In the order, the district court granted summary judgment on Brown's claim that the defendants violated her Sixth Amendment right to be informed of the nature and cause of the accusations against her.

the right alleged by the plaintiff." However, since there were facts in dispute, including whether Brown had in fact violated a direct order from Officer Gilmore, the district court found that the case was inappropriate for summary judgment and denied the officers' motion on the false arrest claim. The officers appeal.[2]

## II.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The legal principles governing the analysis of qualified immunity claims in this context are quite clear. As an initial matter, courts must decide "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 121 S. Ct. 2151, 2155 (2001); *see also Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987); *Milstead v. Kibler*, 243 F.3d

---

[2]Brown contends that the officers may not appeal the district court's denial of qualified immunity because the district court determined that there were genuine issues of material fact in dispute. *See Johnson v. Jones*, 515 U.S. 304 (1995). However, this appeal does not turn on disputed facts, but, rather, presents a question of law — whether the facts taken in the light most favorable to Brown allege a constitutional violation at all. It is clear "that summary judgment determinations *are* appealable when they resolve a dispute concerning an 'abstract issu[e] of law' relating to qualified immunity." *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (quoting *Johnson*, 515 U.S. at 317); *see also Gould v. Davis*, 165 F.3d 265, 269 (4th Cir. 1998) (holding that "'reasonableness' of the officers' decision in applying for and executing the warrant is a legal question" and therefore, the court had jurisdiction to hear appeal from the district court's order denying summary judgment on the basis of qualified immunity). And the Supreme Court only recently made clear in *Saucier v. Katz*, 121 S. Ct. 2151, 2156 (2001), that qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* (quoting *Mitchell v. Fortsyth*, 472 U.S. 511, 526 (1985)). The questions of law presented in this case are thus precisely those which should be resolved at "the earliest possible stage in litigation" if appeal under the collateral order doctrine is to serve the purposes of immunity at all. *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

157, 161-62 (4th Cir. 2001). Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right. *Saucier*, 121 S. Ct. at 2156; *see also Wilson*, 526 U.S. at 609, 614-15; *Anderson*, 483 U.S. at 638-41; *Milstead*, 243 F.3d at 161-62.

### III.

We first address Brown's allegations of false arrest. And to do so we consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 121 S. Ct. at 2156. Because, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquires concerning qualified immunity." *Id.*

To establish an unreasonable seizure under the Fourth Amendment, Brown needs to show that the officers decided to arrest her for disorderly conduct without probable cause. *Dunaway v. New York*, 442 U.S. 200, 213 (1979); *see also Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996); *United States v. Al-Talib*, 55 F.3d 923, 931 (4th Cir. 1995). Probable cause is determined from the totality of the circumstances known to the officer at the time of the arrest. *United States v. Garcia*, 848 F.2d 58, 59-60 (4th Cir. 1988). For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required. *Wong Sun v. United States*, 371 U.S. 471, 479 (1963). Two factors govern the determination of probable cause in any situation: "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). Therefore, probable cause "could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id.*

To prove an absence of probable cause, Brown must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that she was violating the disorderly conduct ordinance. This

she has failed to do. Taking the undisputed facts first, two cars had been involved in a minor accident. Those cars were blocking Broadway Street, the main artery leading into downtown Myrtle Beach. By the time Officer Gilmore arrived, around 11:20 p.m., traffic heading downtown had already been blocked and backed up for at least thirty minutes. Moreover, it was Memorial Day Weekend and thousands of vacationers and festival participants were visiting the city. The presence of so many vacationers had forced the City to borrow law enforcement personnel from other South Carolina law enforcement agencies to assist with crowd control and other issues.

Brown contends that when Officer Gilmore arrived at this combustible scene, he came up behind her and began yelling, but she could not understand what he was saying. However, the mere fact that Brown claims she did not hear Officer Gilmore's request to move her car does not require us to conclude that her arrest violated the Fourth Amendment or even that this dispute needs to be resolved by a jury. Rather, the question is whether a reasonable officer would be justified in the belief that a citizen heard his request. In that regard, it is important to note that although Brown claims she could not hear Officer Gilmore's request to move her car, she admits they were standing very close to each other. Brown even claimed Gilmore was invading her personal space. Also, it is undisputed that the other driver involved in the accident, who was standing farther away from Officer Gilmore than Brown, had no difficulty hearing the request and moved her car. There is no allegation by Brown that Officer Gilmore never said "Move your car." Significantly, Brown claims only that he was yelling and she could not hear or understand him.

Giving Brown the benefit of the doubt as to whether she heard the officer's request does not strip the officers of an objectively reasonable belief that she heard the request. In fact, a reasonable officer in this situation would have been warranted in the belief that Brown knew full well that she had been asked to move her automobile. It is not simply that Brown was within close proximity to the officer when he spoke. The situation itself suggested that Brown should move a car that had been blocking traffic for over half-an-hour on a major thoroughfare during Memorial Day weekend. An officer would be expected to request that the parties move their cars off the main road before the tempers of other motorists reached the boiling point. Offi-

cer Gilmore claims he did just that and Brown does not so much as suggest he did anything else. When, after the request was made, one party promptly moves its car while the other party refuses to do so, a reasonable officer could conclude that the second party was disobeying his order. In sum, a reasonable officer could believe that there was probable cause to arrest that party for creating a breach of the peace.

IV.

We next turn to Brown's claim that Officer Pina used excessive force when he arrested her. Since there is no allegation that Officer Gilmore ever touched Brown, there can be no excessive force claim made against him. Once again, we are required to consider whether the facts, taken in the light most favorable to Brown, show that Officer Pina's conduct violated a constitutional right. *See Saucier*, 121 S. Ct. at 2156.

Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388, 394 (1989); *see also Saucier*, 121 S. Ct. at 2158; *Milstead*, 243 F.3d at 162. In evaluating excessive force claims, "the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." *Saucier*, 121 S.Ct. at 2158. The Supreme Court has noted that analyzing the merits of excessive force claims "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Brown's allegation of excessive force centers on her assertion that Officer Pina handcuffed her, causing her wrists to swell, dragged her to the car and then pulled her into his cruiser. She alleges no injury of any magnitude. In fact, some of the injuries Brown complained of, such as neck and back pain, were a result of the car accident not the arrest. It is also well established that the right to make an arrest carries with it the right to use a degree of physical coercion or threat thereof to effect the arrest. *Saucier*, 121 S.Ct. at 2160.

Here the circumstances justified the minimal level of force applied by Officer Pina. It is undisputed that the situation on the street was tense. In the midst of a crowded scene, Officer Pina was attempting to arrest Brown for failing to obey Officer Gilmore's orders. As we discussed, it was reasonable for both Officer Gilmore and Officer Pina to believe that Brown deliberately refused to comply with a request to move her car. It was not unreasonable for the officers to believe that a suspect who had already disobeyed one direct order would balk at being arrested. Handcuffing Brown and escorting her to a police vehicle was thus reasonable under the circumstances. For courts to fine-tune the amount of force used in a situation such as this would undercut the necessary element of judgment inherent in a constable's attempts to control a volatile chain of events. And, in all events, a standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified, as here, in effecting the underlying arrest.

Brown says she was not resisting arrest and that she kicked her sandal off only because it became tangled. Officer Pina, on the other hand, believed Brown was angry, attempting to resist, and that the sandal came off in a struggle. As the Supreme Court has made clear, this subjective clash of beliefs is not one that we need to resolve. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier*, 121 S. Ct. at 2158. The circumstances surrounding the arrest gave the officers no reason to believe Brown would be amenable to their requests. If courts refused to permit the use of proportionate force in these circumstances, we would be inviting any suspect who is unhappy about an arrest to resist that arrest in the hopes that the officers will simply desist rather than risk liability.

## V.

We recognize that encounters such as this one come charged with emotion. The parties generally arrive at court with different versions of events, reflecting the different vantage points of those involved. Without minimizing the dignitary concerns of those arrested and without granting carte blanche to those making the arrest, the Supreme Court has mandated that we respect the objectively reason-

able conduct of those charged with the duty of maintaining public peace. "[J]udged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," the actions in this case pass constitutional muster. *Graham*, 490 U.S. at 396. The officers here did not have the option of delaying decision in order to determine what a fact finder months or years later might make of the situation. They had to get traffic moving on the spot. They did so with a minimum of force, and they committed no constitutional infraction.

For the foregoing reasons, the judgment of the district court is

*REVERSED*.