Frederick T. MOORE, IV,

v.

Rick WINER, et al.

No. CIV. S 00–3218.

United States District Court,
D. Maryland.

March 20, 2002.

Peter I. J. Davis, Law Office, Rockville, MD, for plaintiff.

Daniel Karp, Allen, Karpinski, Bryant and Karp, PA, Baltimore, MD, for defendants.

## MEMORANDUM OPINION

SMALKIN, Chief Judge.

This suit, whose jurisdictional allegations establish only federal question jurisdiction, results from an unfortunate encounter between the plaintiff—a diabetic—and officers of the Sheriff's Department of Frederick County, which enforces, *inter alia*, traffic laws on public roads in that county. Although terribly unfortunate, the results of this encounter do not present a triable case under established Supreme Court and Fourth Circuit law, for reasons to be set forth *post*.

The matter is before the Court on the defendants' motion for summary judgment, which has been fully briefed, and no oral hearing is necessary. Local Rule 105.6 (D.Md.2001).

The essential facts leading up to the encounter between plaintiff and the deputies are undisputed. Plaintiff suffers from juvenile diabetes, but he was not wearing a "medic alert tag" so indicating on the evening of June 12, 1998, when the occurrence in suit took place. That evening, plaintiff had had dinner with his family in Great

Falls, Virginia, after which he headed home in his truck, alone. The last thing plaintiff remembers prior to the end of his encounter with police (which will be detailed hereinafter), he was attempting to turn around to meet his wife at a gas station in Virginia. Having then fallen into a diabetic shock, the plaintiff continued driving, but his driving was erratic enough that, while still in Virginia, he attracted the attention of a retired police officer, who followed plaintiff's truck into Maryland after it crossed the Potomac at Point of Rocks. Once inside Maryland, the retired police officer called the Maryland State Police in Frederick, reporting that the plaintiff's driving was extremely erratic, including his having crossed over to the left into oncoming traffic lanes and also swerving off to the right, sideswiping guardrails. The retired officer assumed that the plaintiff was intoxicated, and felt that "there was going to be a tragic event."

A Maryland State Trooper fell in behind the plaintiff on Maryland Route 340. The trooper observed the plaintiff swerving completely across the road onto the median strip, and then onto the opposite side, and up onto an embankment. When the state trooper tried to stop the plaintiff, plaintiff accelerated, crossing the median entirely into the oncoming traffic lanes. In the process, he ran between six and twelve cars off the road. The defendant herein, Deputy Winer, was ahead of the plaintiff's vehicle and set up a road block. The plaintiff did not slow down, causing Winer to take evasive action. Winer eventually forced the plaintiff's vehicle to a stop against a guardrail.

The plaintiff failed to respond to Winer's repeated orders to turn off his ignition, but instead, put his hand on the gear shift. Plaintiff also disregarded Winer's orders to exit the vehicle. Winer then told plaintiff he would have to break the car window in order to turn the truck off if plaintiff did

not do it, which he did not, so Winer broke the window. According to the officers, including defendant Norris, plaintiff kept at least one hand on the steering wheel and was attempting to shift into gear with the other, a behavior which he resumed after having been sprayed with pepper spray. With the plaintiff still unresponsive to verbal commands, Winer threatened to strike him with his baton if he did not comply with orders to stop the engine. Plaintiff did not, so Winer struck him several times on the upper arm and shoulder, again to no effect, so a K–9 was placed in the truck. Plaintiff pushed the dog out of the truck. The K–9 was reinserted into the truck, at which time he bit the plaintiff on the right arm and shoulder, which resulted in plaintiff becoming submissive, placing his hands on the steering wheel, and stopping revving the truck. Plaintiff was then withdrawn from the truck, placed on the ground, and handcuffed.

After plaintiff was secured, a state trooper noticed a card hanging from the rear view mirror of the truck indicating that plaintiff was a diabetic. The trooper then called for an ambulance, and plaintiff was transported to the hospital, with no police guard. Later, and after his driving behavior had been reported to his home state of Virginia, six traffic tickets were issued to the plaintiff, all of which were subsequently "*nolle prossed.*" (Maryland's equivalent to a dismissal.)

█ The defendants urge that they are entitled to summary judgment on the plaintiff's federal claims of excessive force and unreasonable seizure (there being no argument advanced by plaintiff in opposition to the defendants' motion with regard to any other federal claims asserted), on the ground of qualified immunity. The Supreme Court has recognized that questions of qualified immunity should be resolved as early as possible in the litigation,

as the purpose of the doctrine of qualified immunity is to serve as a bar to suit, not just to judgment. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Although there are sometimes disputes of fact which must be resolved before a decision can be rendered on questions of qualified immunity, in this case, the officers' observations stand essentially unchallenged, in light of the plaintiff's inability to recall the facts on his own.

Having in mind the Supreme Court's threshold tests for consideration of a qualified immunity claim, *see Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), the Court has determined that, as to the plaintiff's claims growing out of his having been stopped and taken out of his truck, the federal rights alleged to have been violated here—*viz.,* to be free from unreasonable seizure, including both the reasonableness of the stop itself and the reasonableness of its execution (the claim of excessive force)—were clearly established at the time in question.

The determinative question, of course, then becomes whether " 'it would have been clear to an objectively reasonable officer' " that his conduct violated those rights. *Brown v. Gilmore,* 278 F.3d 362, 366–67 (4th Cir.2002) (quoting *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). In this connection, the fact that the four police officers on the scene have slightly differing recollections of the cardinal facts (although they agree as to the vast bulk of the facts) does not itself generate a triable issue precluding the entry of summary judgment on qualified immunity grounds. *See, e.g., Sigman v. Town of Chapel Hill,* 161 F.3d 782 (4th Cir.1998).

■ There is no question in this case that the defendants are entitled to qualified immunity on plaintiff's federal claims. They were undoubtedly entitled to stop the plaintiff, both to investigate the cause of his erratic driving behavior and to keep people from being killed by it. *See Edwards v. State,* —— Md.App. ——, 2002 WL 340587 (2002). Having stopped the plaintiff, who failed to comply with lawful orders to shut off his truck so that he could not further travel, create a new hazard, or cause harm to the officers who had stopped him and others, the defendants were clearly authorized to use physical force to subdue the plaintiff and effectuate his arrest. *See Brown,* 278 F.3d 362; *Gooden v. Howard County,* 954 F.2d 960 (4th Cir.1992). The officers' escalating use of force was a measured response engendered by their objective observations and conclusions from plaintiff's erratic behavior that he needed to be subdued to prevent harm to himself, other motorists, and the officers. All of their conduct, in short, was such that an objectively reasonable officer would not have believed that it violated plaintiff's constitutional rights.

■ Plaintiff's case against qualified immunity is premised upon the depositions of the two Maryland State Troopers, Click and Cibula, who were assisting at the scene. Their testimony, especially Cibula's as to the use of a K–9 (police dog) to extract plaintiff from the vehicle, does lend support to plaintiff's point that a reasonable officer might have concluded that it was not necessary to utilize a dog to make the extraction. However, their deposition testimony certainly does not compel the legal conclusion—or generate a triable factual issue—that the defendants' perceptions of the situation and their use of force (including the dog), or both, were **unreasonable**. The fact that different officers perceive things in different ways does not itself make one particular perception or the employment of a particular police technique unreasonable. *Cf. Gooden,* 954 F.2d at 965.

In this case, for example, it is true that Trooper Cibula testified that he did not think it was necessary to utilize a dog to extract plaintiff from the vehicle, but that testimony was tempered by his testimony that he was unfamiliar with the use of dogs in such situations, and that he later learned that such use was an acceptable technique, *see* Dep. of Andrew P. Cibula at 66–69. Furthermore, Click perceived the plaintiff to be on drugs, and the troopers' speculation that he might have been undergoing a medical condition was identified by them on deposition as just that—speculation. More to the point, both troopers' deposition testimony confirmed their perceptions that it was necessary for police to gain control of the vehicle, which plaintiff simply refused to relinquish, and that force was needed for such purpose.

Although it is arguable that defendants would have been alerted to plaintiff's physical condition by the presence of a tag hanging from his rear view mirror, had they noticed it (and there is no evidence that they did), the law does not condone second-guessing by a court as to an officer's actions in an exigent situation in the field. These officers were faced with a dangerous situation, at night, when they had to focus their whole concentration on bringing the plaintiff and his vehicle under control. They cannot be faulted in hindsight for having overlooked a mirror tag. In this regard, Chief Judge Wilkinson's observations in reversing the district court's failure to grant summary judgment in *Brown, supra,* bear repetition here:

We recognize that encounters such as this one come charged with emotion. . . . Without minimizing the dignitary concerns of those arrested and without granting carte blanche [sic] to those making the arrest, the Supreme Court has mandated that we respect the objectively reasonable conduct of those charged with the duty of maintaining public peace. "[J]udged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," the actions in this case pass constitutional muster. The officers here did not have the option of delaying decision in order to determine what a fact finder months or years later might make of the situation.

*Brown, supra,* at 370 (citation omitted).

This Court certainly cannot top Chief Judge Wilkinson's eloquent explication of the proper application of the qualified immunity doctrine, which is as fully applicable in this case—despite its unfortunate and sympathetic plaintiff—as it was in that case.

Turning to plaintiff's state law claims, which he is asserting only under the "pendent jurisdiction" of this Court (now codified as its supplemental jurisdiction), and there being no allegations establishing diversity of citizenship, the Court, having dismissed the plaintiff's federal claims, exercises its discretion to dismiss his state-law claims, without prejudice, pursuant to 28 U.S.C. § 1367(c)(3) (2001).

The Court notes that the State of Maryland and Frederick County, Maryland, have previously been dismissed from this case, and, even if they were still parties, there are absolutely no facts indicating that Frederick County (the only of these entities against which a section 1983 claim could be asserted) had any custom or practice relevant to this case that violated any federally protected right of the plaintiff's.

For the reasons stated, an Order will be entered separately, granting the individual defendants' motion for summary judgment as to plaintiff's federal claims and dismissing his state-law based claims, without prejudice, with each party to bear its own costs.

*JUDGMENT ORDER*

For the reasons stated in a Memorandum Opinion entered this date, it is, by the Court, this 20th day of March, 2002, ORDERED and ADJUDGED:

1. That the remaining defendants' motion for summary judgment on the ground of qualified immunity BE, and the same hereby IS, GRANTED;

2. That judgment BE, and it hereby IS, ENTERED in favor of the remaining defendants, against the plaintiff, on plaintiff's federal claims, with each party to bear his own costs;

3. That the plaintiff's state-law based claims BE, and they hereby ARE, DISMISSED, without prejudice, pursuant to 28 U.S.C. section 1367(c)(3); and

4. That the Clerk inform counsel for the parties of the entry of this Order and of the said Memorandum.