Tyrone **ANDREWS**, Plaintiff,

v.

**R.W. ELKINS, Jr.,** Defendant.

No. 1:01 CV 584.

United States District Court,
M.D. North Carolina.

Oct. 24, 2002.

Tyrone Andrews, Siler City, NC, pro se.

Patricia A. Duffy, N.C. Dept. of Justice, Education and Correction, Isaac T. Avery, III, N.C. Dept. of Justice, Raleigh, NC, for defendant.

## MEMORANDUM OPINION

OSTEEN, District Judge.

This case involves allegations by Plaintiff Tyrone Andrews, acting *pro se,* based on 42 U.S.C. § 1983 of excessive force and deprivation of property in violation of the Fourth and Fourteenth Amendments. The case is currently before the court on Defendant R.W. Elkins, Jr.'s Motion for Summary Judgment, and Defendant's Motion for Attorney's Fees and Costs. Because this court finds that Plaintiff has not produced sufficient evidence that his injuries were more than *de minimus,* or that his property was unconstitutionally deprived, Defendant's Motion for Summary Judgment will be granted. Defendant's Motion for Attorney's Fees and Costs will be denied.

## I. FACTUAL BACKGROUND

The following material facts are undis-

puted.[1] On September 25, 1998, Plaintiff Andrews was stopped by Defendant Elkins, a North Carolina State Highway Patrolman, at a drivers license checking station on Siler City–Snow Camp Road in Siler City, North Carolina. Defendant Elkins asked Plaintiff to produce his driver license. When Plaintiff was unable to retrieve his license after several minutes of searching, Defendant Elkins asked him to pull to the side of the road and to continue looking for it. Several minutes later, Defendant Elkins asked Plaintiff again for his license and Plaintiff was still unable to produce it. Defendant Elkins then returned to his vehicle and conferred with a sergeant about whether to arrest Plaintiff. Defendant Elkins returned to Plaintiff's vehicle, ordered him to step out, and arrested him for failing to produce his driver license.

After Defendant Elkins handcuffed Plaintiff, Plaintiff looked down into his shirt pocket and discovered his license. Defendant Elkins took Plaintiff's license while Plaintiff remained under arrest. He placed Plaintiff in the front seat of the patrol car. Defendant Elkins then asked Plaintiff if he would like to leave his vehicle on the side of the road or have a tow truck retrieve his vehicle. Plaintiff neither objected nor consented to the towing of his vehicle.[2] Because Defendant Elkins did not receive a response from Plaintiff, and the traffic was backing up considerably at the checkpoint, Plaintiff's vehicle was towed by a private company called American Service Center.[3]

Defendant Elkins transported Plaintiff to the Siler City Police Department where he was placed on a bench. Approximately two minutes later, Defendant Elkins removed Plaintiff's handcuffs. Shortly thereafter, Plaintiff's hands became cold and numb. He requested medical attention and was transported to Chatham Hospital within 10 minutes. The outpatient emergency room record indicated that Plaintiff's wrists had "visible marks" where the handcuffs had been placed, but that he was "alert, oriented," and his skin color was "good" and "pink." (Pl.'s Dep., Def.'s Ex. 3.)[4] When Plaintiff was released from the hospital that same day, Defendant Elkins transported Plaintiff from the hospital to the Siler City Police Depart-

---

1. Some of the facts cited herein are from Plaintiff's May 13, 2002, deposition. At the deposition, Plaintiff was informed by Defendant's counsel of his right to waive his signature and not review the deposition. Plaintiff indicated his intent to review the deposition and did not enter his signature on May 13, 2002. Subsequently, Plaintiff refused to go to the court reporter's office to review and sign his deposition. In early July 2002, the clerk's office granted Plaintiff permission to come to the courthouse to review and sign his deposition. Plaintiff never came to the clerk's office and never reviewed and/or signed the deposition.

2. Plaintiff was presented with a highway patrol form requiring him to either consent to tow the vehicle, to remove or store it, or to leave it at the scene. Defendant Elkins noted that Plaintiff "would not sign or answer anything" on this form. (Pl.'s Dep., Def.'s Ex. 2.)

3. Plaintiff alleges that the towing company loaded his vehicle improperly onto the wrecker. Plaintiff further alleges that his transmission did not work properly after his vehicle was towed. Besides a bent license plate, no other evidence of a causal connection between the allegedly improper towing and the subsequent transmission problems was offered by Plaintiff. (Pl.'s Dep. at 25.) The court also notes that Plaintiff has not filed a claim with the towing company for the alleged damage to his vehicle.

4. The outpatient emergency record also indicated that approximately 15 minutes after the handcuffs were removed, the numbness in Plaintiff's hands had decreased but his fingertips were still "slight[ly] numb." (Pl.'s Dep., Def.'s Ex. 3.)

ment to bring him before a magistrate judge. Plaintiff was rearrested but not handcuffed at any time after his release from the hospital.

Prior to the events of September 25, 1998, Plaintiff suffered from hypertension which was controlled through medication.[5] Plaintiff's alleged personal injury arising out of the incident is aggravated hypertension caused by the handcuffs being too tight.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate after an examination of the pleadings, affidavits and other proper discovery materials, viewed in the light most favorable to the non-moving party, indicates that there exists no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The essential question for the court's determination is whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Unless the nonmoving party comes forward with specific facts demonstrating a genuine issue for trial, summary judgment is proper as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

The threshold issue with regard to Plaintiff's excessive force claim is whether Defendant Elkins' handcuffing of Plaintiff during his arrest and detainment was the direct and proximate cause of Plaintiff's alleged aggravated hypertension. The Supreme Court has held that analysis of an excessive force claim under section 1983 begins with identifying the precise constitutional right allegedly violated by the challenged use of force. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). In most instances, either the Fourth Amendment's prohibition against unreasonable searches and seizures or the Eighth Amendment's ban on cruel and unusual punishment is the protective shield invoked against physically intrusive governmental action. *Id.*, 490 U.S. at 394, 109 S.Ct. at 1871. Because Plaintiff alleges that the Fourth and Fourteenth Amendments are the source of protection for his alleged injuries, this court will focus on these two amendments.

■ The Fourth Amendment protects individuals against excessive force during the course of an arrest. *Id.*, 490 U.S. at 395, 109 S.Ct. at 1871 (holding that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."). This court must determine, from the officer's objective perspective, whether the particular use of force was reasonable in light of the prevailing circumstances. *Scott v. United States*, 436 U.S. 128, 137–39, 98 S.Ct. 1717, 1723–24, 56 L.Ed.2d 168 (1978). Even assuming the officer possessed an evil intent in applying force, such intent by itself does not create a Fourth Amendment violation out of an objectively reasonable use of force. *Id.*, 436 U.S. at 138, 98 S.Ct. at 1723.

---

**5.** Plaintiff refers to "hypertension" and "high blood pressure" interchangeably throughout his written submissions to the court.

When the Fourth Amendment's reasonableness standard has been applied to excessive force claims involving handcuffing of an arrestee, the Fourth Circuit has differentiated between objectively reasonable and unreasonable force. In *Carter v. Morris*, the Fourth Circuit held that when an officer places the handcuffs on the arrestee too tightly and pushes her legs into the police car, such evidence, without more, is insufficient as a matter of law to support a Fourth Amendment violation. 164 F.3d 215, 219, n. 3 (4th Cir.1999).[6]

■ Similar to *Carter*, Plaintiff in the case at bar has not produced any evidence of injury to indicate objectively an unreasonable use of force at the time of the arrest. To the contrary, the evidence indicates that Defendant Elkins' arrest of Plaintiff was carried out according to highway patrol policy, Defendant Elkins' training, and in accordance with the same handcuffing technique used on hundreds of other arrested individuals. (Def.'s Aff. ¶ 16); *see also Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir.2000) ("[A] standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified ....."). Therefore, there is no issue of material fact about whether Defendant Elkins used excessive force in violation of the Fourth Amendment when he handcuffed Plaintiff.

■ With regard to Plaintiff's allegations about the severity of his injuries, the medical records do not support Plaintiff's claim. Plaintiff alleges that his hands turned "blue" after Defendant Elkins placed the handcuffs on him, but the medical records indicate a "pink" color to Plaintiff's hands. (Pl.'s Dep., Def.'s Ex. 3.) Further, on the night of the arrest, the emergency room medical records indicate that Plaintiff's blood pressure was 104/65 after the handcuffs were removed. *Id.* However, prior to the arrest, on July 22, 1998, Plaintiff's blood pressure was 150/92.[7] (Pl.'s Dep., Def.'s Ex. 5.) Approximately three years after his arrest, on August 16, 2001, Plaintiff's blood pressure was 120/90.[8] *Id.* These records indicate that Plaintiff's blood pressure is not significantly higher now than prior to his arrest. Absent contradictory evidence, this court is unable to articulate a genuine issue of fact that unreasonable force was used against Plaintiff in violation of his Fourth Amendment rights.

Because Plaintiff also alleges that the Fourteenth Amendment was violated by Defendant Elkins' alleged use of excessive force during Plaintiff's detainment, this court will focus its analysis there.[9] The due process clause of the Fourteenth Amendment provides the standard for "evaluating the constitutionality of conditions or restrictions of pretrial detention ....." *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). The Supreme Court has stated that the

---

6. In addition, such minimal evidence is also insufficient to support a Fourteenth Amendment violation. *Riley v. Dorton*, 115 F.3d 1159, 1166–67 (4th Cir.1997) (en banc).

7. During discovery, Plaintiff provided this information to Defendant from a progress report sent to him by the Department of Veterans Affairs Medical Center.

8. Plaintiff provided this information to Defendant in the same enclosure as the previous progress report.

9. Significantly, the Fourth Circuit is in agreement with the Fifth, Seventh, and Eleventh Circuits that the Fourth Amendment does not extend to the alleged mistreatment of pretrial detainees or arrestees in custody. *Riley*, 115 F.3d at 1164. In rejecting the "continuing seizure" theory of the Fourth Amendment, the Fourth Circuit held that the Fourteenth Amendment is the appropriate protection for excessive force claims that might arise out of pretrial detainment. *Id.* at 1166.

due process clause does not protect against *de minimus* levels of injury. *See Ingraham v. Wright,* 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977). The Fourth Circuit explained the *de minimus* injury rationale in *Riley:* "[p]unishment must mean something more than trifling injury or negligible force. Otherwise, every touch would be actionable and every alleged 'push and shove' would entitle plaintiff to a trial ... it would also constitute an unwarranted assumption of federal judicial authority to scrutinize the minutiae of state detention activities." *Riley,* 115 F.3d at 1167.

In *Brown,* the Fourth Circuit reiterated the notion that *de minimus* injury does not rise to the level of a constitutional violation. There, the plaintiff's allegations of excessive force by the officer included handcuffing, swollen wrists, and dragging and pulling her into the car. *Brown,* 278 F.3d at 369. The plaintiff offered no additional evidence of injury. The court held it was reasonable for the officer to handcuff the plaintiff upon arrest because the plaintiff had refused purposely the officer's request to move her car. *Id.*

Similar to *Brown,* Plaintiff, in this case, suffered minor injuries after being handcuffed (numbness in the hands), but he did not present any evidence of a more severe injury. Such a minimal injury is not the type of harm against which the due process clause of the Fourteenth Amendment protects. *See, e.g., Taylor v. McDuffie,* 155 F.3d 479, 484 (4th Cir.1998), *cert. de-*

*nied,* 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 115 (1999); *Norman v. Taylor,* 25 F.3d 1259, 1263–64 (4th Cir.1994) (en banc). More importantly, though, Plaintiff has not produced any evidence providing a causal link between his handcuffs being too tight and his allegedly aggravated hypertension.[10] Therefore, there is no issue of material fact about whether Defendant Elkins used excessive force in violation of the Fourteenth Amendment during Plaintiff's brief detainment.

■ The threshold issue with regard to Plaintiff's deprivation of property claim is whether the due process clause of the Fourteenth Amendment was implicated when Defendant Elkins allegedly damaged Plaintiff's vehicle as it was towed. A negligent act of an official causing loss of property must be brought under state tort law in state court. *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). The due process clause is simply not invoked when unintended loss of property results from an official's negligent act. *Id.*

■ Plaintiff's statutory basis for the deprivation of property claim, 42 U.S.C. § 1983, is erroneous because an official's allegedly negligent act is arguably at issue.[11] Further, because Plaintiff does not provide evidence of damage to his vehicle beyond a bent license plate, and because Plaintiff did not object to the towing of his vehicle when Defendant Elkins posed the question to him, there is no issue of mate-

---

10. Plaintiff did not file a brief in opposition to Defendant's Motion for Summary Judgment. Because Plaintiff is acting *pro se,* this court waited well past the filing deadline for briefs (September 3, 2002) to rule on Defendant's Motion for Summary Judgment. Because Plaintiff failed to file a brief in opposition, and because no evidence of aggravated hypertension has been offered, the court must decide this case as a matter of law.

11. Plaintiff did not specifically allege negligence as the theory of damages for the deprivation of property claim. Because no evidence of "wilful, wanton and reckless disregard for the Plaintiff's rights" (Pl.'s Compl. ¶ X) was submitted to the court with regard to Plaintiff's deprivation of property, the only basis for Plaintiff's claim is negligence.

rial fact about whether Defendant Elkins constitutionally deprived Plaintiff of his property. Accordingly, this court must rule in favor of Defendant Elkins on this claim as a matter of law.

■■ To the extent that Plaintiff's allegations are against Defendant Elkins in his official capacity, both the excessive force and the deprivation of property claims are barred as a matter of law.[12] The Eleventh Amendment bars claims by individuals seeking to impose retroactive monetary damages on the state unless the state consents to the filing of the suit. *See Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057–58, 57 L.Ed.2d 1114 (1978); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). Similarly, state officials acting in their official capacity cannot be sued pursuant to the Eleventh Amendment for retroactive monetary damages. *Kentucky v. Graham,* 473 U.S. 159, 170, & n. 17, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985).

■ With regard to section 1983 claims, the Supreme Court has held that the Eleventh Amendment cannot be abrogated by an action that arises solely under section 1983. *See Quern v. Jordan,* 440 U.S. 332, 338, 99 S.Ct. 1139, 1144, 59 L.Ed.2d 358 (1979) ("[b]ecause this action comes to us as if it arose solely under § 1983 ... we cannot conclude that federal law authorized an official-capacity action for damages against [the official] to be brought in federal court."); *Edelman,* 415 U.S. at 677, 94 S.Ct. at 1362. Here, Plaintiff seeks solely retroactive monetary relief and bases his claims against Defendant Elkins in his official capacity on section 1983. Therefore, Plaintiff is barred from suing

Defendant Elkins in his official capacity pursuant to the Eleventh Amendment.

Because this court finds insufficient evidence for both Plaintiff's excessive force and deprivation of property claims to be decided in Plaintiff's favor, Defendant's defense of qualified immunity is not applicable and therefore will not be discussed. This court also declines to rule on either Plaintiff's false arrest or intentional infliction of emotional distress claims because the court lacks pendent jurisdiction over these state law claims.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment will be granted, and Defendant's Motion for Attorney's Fees and Costs will be denied.

A judgment in accordance with this memorandum opinion will be entered contemporaneously herewith.

---

12. Again, although Plaintiff did not specifically allege any claims against Defendant Elkins in his official capacity, this court broadly construes claims brought by *pro se* plaintiffs. The fact that several of Plaintiff's claims refer to the State as the actor, and Defendant Elkins as the agent, may be Plaintiff's attempt at an official capacity claim. *See* (Pl.'s Compl. ¶ IX); *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985).