901 So.2d 399 (2005)
Dwight Juan GORDON, Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-1547.
District Court of Appeal of Florida, Second District.
May 13, 2005.
Kendra D. Presswood of Presswood Law Firm, P.A., Holmes Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Helene S. Parnes and Diana K. Bock, Assistant Attorneys General, Tampa, for Appellee.
WALLACE, Judge.
Dwight Juan Gordon appeals the judgment and sentence imposed on him for trafficking in cocaine following the denial of his dispositive motion to suppress. The *400 cocaine was discovered during a search of Gordon's vehicle that ensued after Gordon was stopped for driving with two air fresheners hanging from the vehicle's rearview mirror. We reverse because driving with an air freshener or other object suspended from the vehicle's rearview mirror does not constitute a traffic infraction under Florida law. Thus the arresting officer had no objective basis to stop Gordon's vehicle.

THE FACTS
On July 2, 2003, Deputy Neil Gershin and Deputy Clifford J. Deutsch of the Collier County Sheriff's Office were engaged in drug interdiction on Alligator Alley. The deputies were in separate vehicles near the toll plaza at the western terminus of the east-west highway. Deputy Deutsch, a canine officer, was accompanied by his narcotics detection dog, "Drago." The deputies saw Gordon drive by in a 1988 Cadillac at approximately 3:30 p.m. Deputy Gershin decided to stop the Cadillac because Gordon was driving with two air fresheners hanging from the vehicle's rearview mirror.
Deputy Gershin pursued and stopped Gordon's vehicle. Deputy Deutsch followed to assist Deputy Gershin. Gordon provided his driver's license, registration, and proof of insurance to Deputy Gershin, who returned to his vehicle to run a records check on his computer. The records check  which was completed within a matter of a few minutes  was negative. Meanwhile, Deputy Deutsch approached Gordon and looked inside the Cadillac. In addition to the two air fresheners hanging from the rearview mirror, the deputy saw four more air fresheners in an open storage compartment near the passenger seat. Deputy Deutsch asked Gordon about the presence of weapons, terrorist-related items, or controlled substances in the vehicle. Gordon denied having any such items but Deputy Deutsch believed that Gordon appeared nervous and exhibited other suspicious behavior when answering questions about controlled substances. Deputy Deutsch asked for and obtained Gordon's consent to search the vehicle.
Gordon got out of the vehicle at Deputy Deutsch's request and stood behind the vehicle near Deputy Gershin. After finding no contraband in the vehicle's passenger compartment, Deputy Deutsch removed the keys from the ignition and opened the trunk. Inside the trunk he found a box of laundry detergent, but no laundry. Deputy Deutsch then retrieved Drago and walked him around the Cadillac. According to Deputy Deutsch, Drago "alerted" at the vehicle's trunk. After securing Drago, Deputy Deutsch opened the box of laundry detergent and found inside it a clear plastic bag containing 250 grams of cocaine. Gordon was arrested and taken to the Collier County Jail. When Gordon bonded out of jail, he found among the personal property returned to him a warning ticket for a violation of section 316.2004(2)(b), Florida Statutes (2003).

PROCEDURAL HISTORY
The State charged Gordon with one count of trafficking in cocaine in excess of 200 grams, a first-degree felony. Gordon filed a motion to suppress the evidence obtained as a result of the stop. After an evidentiary hearing, the trial court denied Gordon's motion. Thereafter, Gordon entered a no contest plea, reserving the right to appeal the denial of his motion to suppress, which the State agreed was dispositive. The trial court sentenced Gordon to prison for a seven-year minimum mandatory term to be followed by three years' probation and a fine of $100,000.

*401 THE HEARING ON THE MOTION TO SUPPRESS

At the hearing on the motion to suppress, the deputies testified that the air fresheners that drew their attention to Gordon's Cadillac were approximately five inches in length. Photographs of the air fresheners in our record reveal that they were shaped like miniature evergreen trees. The deputies agreed that the air fresheners were similar to air fresheners that are generally available for sale in automotive supply stores and in car washes. A string was attached to the top portion of each air freshener. The string was looped over the post supporting the vehicle's rearview mirror. Thus the air fresheners were not affixed to the vehicle's windshield. Instead, they were suspended loosely in the vehicle by the string that hung from the rearview mirror. Deputy Deutsch testified that air fresheners may be used to mask the odor of controlled substances.
Deputy Gershin and Deputy Deutsch testified at the hearing that the air fresheners in Gordon's Cadillac obstructed the driver's view of the roadway in violation of section 316.2952(2), Florida Statutes (2003).[1] However, the deputies did not explain how the air fresheners would have obstructed Gordon's view of the roadway through the front windshield or the extent to which his vision would have been obstructed. Gordon admitted that he was driving with the two air fresheners hanging from his rearview mirror, but he denied that they obstructed his view of the road. Neither the State nor the defense offered any expert witness testimony on the factual issue of the extent to which relatively small objects suspended from a vehicle's rearview mirror would obstruct the driver's view of the roadway.[2] Deputy Gershin testified at the hearing that he had stopped "hundreds" of motorists for similar violations. He had also written thirty-seven citations for this offense since January 2001.[3] At the conclusion of the hearing, the trial court ruled that the State's evidence concerning Gordon's operation of the Cadillac with two air fresheners suspended from the rearview mirror was sufficient to support the traffic stop. The trial court also rejected Gordon's other challenges to the validity of the vehicle search.

ANALYSIS

A. The Standard of Review

We employ a mixed standard of review in considering the trial court's ruling on Gordon's motion to suppress. The trial court's determination of historical facts enjoys a presumption of correctness and is subject to reversal only if not supported by competent, substantial evidence in the record. However, the trial court's determinations on mixed questions of law and fact and its legal conclusions are subject to de novo review. See Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Connor v. State, 803 So.2d 598, 608 (Fla.2001); E.B. v. State, 866 So.2d 200, 202 (Fla. 2d DCA 2004).

*402 B. The Issue to Be Decided

Gordon raises three issues challenging the validity of the vehicle search that resulted in the discovery of the cocaine hidden in the box of laundry detergent located in the trunk. We need discuss only one: the lawfulness of the initial traffic stop. In determining the lawfulness of the traffic stop at issue in this case, we must examine whether the arresting officer had an objective basis to stop Gordon's vehicle. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In "applying the objective test, generally the only determination to be made is whether probable cause existed for the stop in question." Holland v. State, 696 So.2d 757, 759 (Fla.1997). Gordon admitted at the hearing on the motion to suppress that he was driving with two air fresheners hanging from his vehicle's rearview mirror. Thus the issue we are called upon to decide is whether this conduct constitutes a traffic violation under Florida law.

C. Legislative Responses to Objects Hanging from Rearview Mirrors

Many motorists in the United States drive with objects hanging from the rearview mirrors of their vehicles. The reported cases reflect the wide variety of such objects.[4] In response, a number of states have enacted statutes that make driving a vehicle with an object suspended from the rearview mirror a traffic infraction. See, e.g., Mich. Comp. Laws § 257.709(1)(c) (2004); Minn.Stat. § 169.71, subd. 1 (2004); Neb.Rev.Stat. § 60-6,256 (2004); N.Y. Veh. & Traf. Law § 375(30) (McKinney 2004); 75 Pa. Cons. Stat. § 4524(c) (2004); S.D. Codified Laws § 32-15-6 (Michie 2004); Va.Code. Ann. § 46.2-1054 (Michie 2004). The Illinois statute is a typical example of these laws. It provides:
No person shall drive a motor vehicle with any objects placed or suspended between the driver and the front windshield, rear window, side wings or side windows immediately adjacent to each side of the driver which materially obstructs the driver's view.
625 Ill. Comp. Stat. 5/12-503(c) (2004).

D. The Situation in Florida

In Florida, vehicles are required to be equipped with rearview mirrors. § 316.294, Fla. Stat. (2003). However, unlike the states whose statutes are referenced above, Florida has no law that specifically prohibits the placement or hanging of objects inside or upon the vehicle, including from the rearview mirror. Thus the resolution of the issue presented by this case requires us to determine whether any provisions of more general application in the *403 Florida Uniform Traffic Control Law, chapter 316, Florida Statutes, make such conduct a traffic infraction.

E. The State's Argument

Section 316.2004(2)(b) was the statute cited in the warning of traffic violation the deputies delivered to Gordon following his arrest. At the hearing on the motion to suppress, both deputies testified that the controlling statute was not section 316.2004(2)(b), but rather section 316.2952(2). On this appeal, the State argues that driving with an object suspended from the vehicle's rearview mirror violates both statutes. Accordingly, we will examine both statutes in order to determine if either or both of them prohibit operating a motor vehicle with an air freshener or other object hanging from the vehicle's rearview mirror.

F. Section 316.2004(2)(b)

Section 316.2004(2)(b) forms part of the Florida Uniform Traffic Control Law. It provides:
No person shall drive any motor vehicle with any sign, poster, or other nontransparent material upon the front windshield, side wings, or side or rear windows of such vehicle which materially obstructs, obscures, or impairs the driver's clear view of the highway or any intersecting highway.
Pursuant to section 316.2004(3), a violation of section 316.2004(2)(b) is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318, Florida Statutes.
The State contends that the air fresheners in Gordon's Cadillac were an impermissible obstruction to the driver's view of the highway pursuant to section 316.2004(2)(b) because they "were hanging from the rearview mirror which is attached to or upon the front windshield." In support of its contention, the State relies on Deputy Deutsch's testimony that he considered the air fresheners a nontransparent material attached to the windshield that would obstruct the driver's view of the road. However, the statute proscribes only signs, posters, or other nontransparent material "upon" the front windshield or other windows. The air fresheners were not attached by tape, glue, or otherwise affixed to the windshield, and they were not in direct contact with it. Instead, they were suspended loosely in the vehicle by a string that looped over the post supporting the rearview mirror that was in turn attached to the windshield. Thus the applicability of section 316.2004(2)(b) to the loosely hanging air fresheners depends on whether the air fresheners can be said to have been "upon" the windshield within the meaning of the statute.
The word "upon" is "regularly employed as a simple equivalent of on, in all the varieties of meaning which that preposition has developed." XIX Oxford English Dictionary 299, 300 (2d ed. 1989). "Upon" means "[a]bove and in contact with; in an elevated position on; at rest on the upper surface of; on and supported by." Id. It is also used to denote "contact with or location on a surface, etc., whatever its position." Id. Thus, when "upon" is used to indicate the spatial relation between objects, it denotes direct contact. It follows then that "upon" does not mean "close to," "in the vicinity of," or "near." Therefore, a plain reading of section 316.2004(2)(b) indicates that it does not prohibit driving with an object loosely suspended from the vehicle's rearview mirror because such an object cannot be said to be "upon" the windshield.
We find persuasive authority for our interpretation of section 316.2004(2)(b) in United States v. King, 244 F.3d 736 (9th Cir.2001). In King, a police officer *404 stopped the defendant in Anchorage, Alaska, for driving with a disabled person's parking identification placard hanging from his rearview mirror. Id. at 737. Following the stop, a records search revealed an outstanding warrant for the defendant's arrest. A pat-down search for weapons following the arrest resulted in the discovery of crack cocaine in the defendant's pocket. Id. at 738.
The lawfulness of the initial traffic stop in King depended upon the construction of a traffic ordinance from the Anchorage Municipal Code. The ordinance, as set forth in the court's opinion, provided:
No person may drive any motor vehicle with any sign, poster, nontransparent material or an accumulation of snow, ice or frost upon the front windshield, side wings, or side or rear windows of such vehicle which materially obstructs, obscures, or impairs the driver's clear view of the street or any intersecting street.
Id. at 740. The district court had upheld the stop, reasoning that the parking placard's indirect contact with the windshield via the rearview mirror constituted a violation of the ordinance. Id. at 738, 740. Nevertheless, the Ninth Circuit reversed the district court based upon the appellate court's interpretation of the word "upon" as requiring direct contact. "[T]he ordinance's use of `upon' the front windshield requires placement on or in direct contact with the windshield. An object hanging elsewhere, even if in close proximity, does not trigger a violation of the ordinance." Id. at 740. See also People v. White, 107 Cal.App.4th 636, 132 Cal.Rptr.2d 371, 374 (2003).
Except for its reference to "an accumulation of snow, ice or frost," the municipal ordinance under review in King is substantially similar to section 316.2004(2)(b). Thus the Ninth Circuit's reasoning in King provides support for our interpretation of section 316.2004(2)(b) as not prohibiting driving with air fresheners or other objects hanging from the vehicle's rearview mirror. In Gordon's case, the air fresheners did not violate section 316.2004(2)(b) because they were not in direct contact with the front windshield or any other windows in the vehicle.[5]

G. Section 316.2952(2)

We turn now to an examination of section 316.2952(2), the other statutory basis for the State's contention that the traffic stop of Gordon's Cadillac was lawful. Section 316.2952(2) is also part of the Florida Uniform Traffic Control Law. It provides:
A person shall not operate any motor vehicle on any public highway, road, or street with any sign, sunscreening material, product, or covering attached to, or located in or upon, the windshield, except the following:
(a) A certificate or other paper required to be displayed by law.
(b) Sunscreening material along a strip at the top of the windshield, so long as such material is transparent and does not encroach upon the driver's direct forward viewing area as more particularly described and defined in Federal Motor Vehicle Safety Standards No. 205 as the AS/1 portion of the windshield.
(c) A device, issued by a governmental entity as defined in s. 334.03, or its *405 designee, for the purpose of electronic toll payments.
Pursuant to section 316.2952(6), a violation of section 316.2952(2) is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318, Florida Statutes.
The analysis of section 316.2952(2) is similar to the analysis of section 316.2004(2)(b). Section 316.2952(2) prohibits operating a motor vehicle "with any sign, sunscreening material, product, or covering attached to, or located in or upon, the windshield." The air fresheners hanging from Gordon's rearview mirror could qualify as "products" but they were not attached to the windshield. Instead, they were hanging from the rearview mirror by means of a string looped over the post supporting the rearview mirror. This kind of indirect contact does not satisfy the requirement of the statute that the offending item be "attached to" the windshield. The air fresheners were certainly not "in" the windshield. Furthermore, based upon the definition of "upon" as requiring direct contact, the air fresheners were not "upon" the windshield because they were not in direct contact with it. Thus driving with air fresheners or other objects hanging from the vehicle's rearview mirror does not violate section 316.2952(2) either.

CONCLUSION
The alleged traffic infraction arising from Gordon's driving with two air fresheners hanging from his rearview mirror was the only ground relied on by the State to justify the stop of Gordon's Cadillac. Because the traffic stop was unlawful, the evidence obtained as result of it should have been suppressed. See Moody v. State, 842 So.2d 754 (Fla.2003); Bowling v. State, 779 So.2d 613 (Fla. 2d DCA 2001). Although Deputy Gershin and Deputy Deutsch apparently had a good faith belief that driving with an air freshener or other object hanging from the rearview mirror is a traffic infraction in Florida, the deputies' misapprehension of the law did not establish the existence of probable cause to stop Gordon's vehicle. See Hilgeman v. State, 790 So.2d 485, 487 (Fla. 5th DCA 2001).
We therefore reverse the judgment and sentence imposed on Gordon and remand for further proceedings consistent with this opinion.
Reversed and remanded.
CANADY, J., and THREADGILL, EDWARD F., Senior Judge, Concur.
NOTES
[1] The warning issued to Gordon following his arrest was for a violation of a different statute, section 316.2004(2)(b).
[2] Cf. People v. White, 107 Cal.App.4th 636, 132 Cal.Rptr.2d 371 (2003) (summarizing testimony of civil engineer who had testified in the trial court that a tree-shaped air freshener hanging from a car's rearview mirror covered less than .05% of the total surface of the car's windshield and would not obstruct the vision of a six-foot tall driver).
[3] The hearing on the motion to suppress was held on October 27, 2003.
[4] United States v. Barragan, 379 F.3d 524 (8th Cir.2004) (air freshener); United States v. Santiago, 310 F.3d 336 (5th Cir.2002) (golf ball-sized spherical crystals); United States v. King, 244 F.3d 736 (9th Cir.2001) (parking placard); Moore v. Winer, 190 F.Supp.2d 804 (D.Md.2002) (medic alert card); Duffey v. State, 741 So.2d 1192 (Fla. 4th DCA 1999) (dog tags); In re Jose Z., 116 Cal.App.4th 953, 10 Cal.Rptr.3d 842 (2004) (Mardi Gras-type beads); People v. Paxton, 255 Cal.App.2d 62, 62 Cal.Rptr. 770 (1967) (St. Christopher medal); Thompson v. State, 399 A.2d 194 (Del. 1979) (graduation tassel); People v. Alvarez, 243 Ill.App.3d 933, 184 Ill.Dec. 263, 613 N.E.2d 290 (1993) (cross hanging on a chain); People v. Mendoza, 234 Ill.App.3d 826, 175 Ill.Dec. 361, 599 N.E.2d 1375 (1992) (fuzzy dice); Commonwealth v. Murray, 27 Mass. App.Ct. 872, 545 N.E.2d 858 (1989) (garter belt); De La Beckwith v. State, 707 So.2d 547 (Miss.1997) (Masonic emblem); State v. Harris, 839 S.W.2d 54 (Tenn.1992) (handcuffs).
[5] In view of our conclusion that Gordon did not violate the statute because the air fresheners were not "upon" the windshield, we need not consider the separate issue of whether it was reasonable for Deputy Gershin to believe as Gordon's Cadillac drove by him at the toll plaza that the air fresheners materially obstructed, obscured, or impaired Gordon's view of the highway. See United States v. Cashman, 216 F.3d 582, 587 (7th Cir.2000).