[No. D041385. Fourth Dist., Div. One. Jan. 30, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD CHAVEZ, Defendant and Appellant.

COUNSEL

Carmela F. Simoncini, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Jeffrey J. Koch and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

McCONNELL, P. J.—Richard Chavez entered guilty pleas to driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)),[1] driving with a blood-alcohol level of .08 percent or more (§ 23152, subd. (b)), and driving with a driver's license suspended for a prior driving under the influence conviction (§ 14601.2, subd. (a)). He admitted a prior felony conviction of driving under the influence that makes the current offense a felony (§§ 23546, 23550.5, subd. (a)), having a blood-alcohol level of .20 percent or more

[1] All statutory references are to the Vehicle Code unless otherwise specified.

(§ 23578) and serving a prior prison term (Pen. Code, § 667.5, subd. (b)). The court denied a request to commit him to the California Rehabilitation Center (CRC) and sentenced him to prison for three years—the two-year middle term for driving under the influence of alcohol with a prior felony conviction for driving under the influence, enhanced one year for the prior prison term. It stayed sentence for driving with a .08 percent or higher blood-alcohol level (Pen. Code, § 654) and imposed a concurrent term for driving with a suspended driver's license. Chavez contends the trial court erred in refusing to consider CRC commitment.

## FACTS

On April 14, 2002, a San Diego County sheriff's deputy stopped a vehicle Chavez was driving on Highway 67 after seeing it tailgate another vehicle and swerve from lane to lane. A blood sample revealed that Chavez had a blood-alcohol level of .22 percent. Chavez has six prior convictions of driving under the influence of alcohol or driving with a .08 percent or more blood-alcohol level during the prior 13 years, one of the convictions being a felony.

## DISCUSSION

Chavez contends that the trial court erred in failing to have him evaluated for commitment to CRC. Welfare and Institutions Code section 3051 provides in part: "Upon conviction of a defendant for a felony, or following revocation of probation previously granted for a felony, and upon imposition of sentence, if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics the judge shall suspend the execution of the sentence and order the district attorney to file a petition for commitment of the defendant to the Director of Corrections for confinement in the narcotic detention, treatment, and rehabilitation facility unless, in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he or she does not constitute a fit subject for commitment under this section."

As the People accurately point out, Welfare and Institutions Code section 3051 provides for suspending execution of sentence and committing to CRC a defendant who is addicted to or in imminent danger of becoming addicted to *narcotics*. The term "narcotic drug" is defined in Health and Safety Code section 11019. The definition does not include alcohol. Citing *People v. Beasley* (1983) 145 Cal.App.3d 16 [193 Cal.Rptr. 86] [heroin], *People v. Davis* (1979) 92 Cal.App.3d 250 [154 Cal.Rptr. 817] [cocaine], *People v. Perez* (1987) 196 Cal.App.3d 686 [242 Cal.Rptr. 135] [PCP & heroin], *People v. Miller* (1991) 233 Cal.App.3d 1551 [285 Cal.Rptr. 410]

[methamphetamine], *People v. Masters* (2002) 96 Cal.App.4th 700 [116 Cal.Rptr.2d 924] [methamphetamine], and *People v. McGinnis* (2001) 87 Cal.App.4th 592 [105 Cal.Rptr.2d 1] [methamphetamine], Chavez argues that the courts have not limited the applicability of Welfare and Institutions Code section 3051 to drugs listed in Health and Safety Code section 11019. He is mistaken regarding *Beasley* and *Davis* since Health and Safety Code section 11019 specifically lists cocaine and an opiate (heroin) as a narcotic. (Health & Saf. Code, § 11019, subds. (b), (e).) The issue raised in the other cases Chavez cites were whether the trial court erred in finding the defendant was an addict or was in danger of becoming an addict; whether the trial court erred in denying worktime credit while the defendant was at CRC; and whether the trial court abused its discretion in applying the excess criminality exception to civil commitment pursuant to Welfare and Institutions Code section 3051. None of these cases discussed whether the defendant was addicted or in danger of becoming addicted to a *narcotic*. ■ A judicial decision is not authority for a point not passed on by the court and directly involved in the case. (*Hart v. Burnett* (1860) 15 Cal. 530, 598.) Since the question of whether Welfare and Institutions Code section 3051 applies to defendants addicted to or in danger of becoming addicted to a substance not listed in Health and Safety Code section 11019, was not considered by the courts in the cases Chavez cites, Chavez has cited no applicable authority in support of his request that we interpret Welfare and Institutions Code section 3051 to include alcohol as a narcotic.

■ We reject Chavez's request that we read into Welfare and Instructions Code section 3051 language requiring trial courts to have defendants evaluated for addiction or the danger of addiction to alcohol. When a statute is clear on its face, there is neither a need nor reason to engage in judicial interpretation. (*People v. Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].) Chavez argues that if Welfare and Institutions Code section 3051 does not include alcohol as an addictive substance, it denies him equal protection of law. "Guarantees of equal protection embodied in the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution prohibit the state from arbitrarily discriminating among persons subject to its jurisdiction. This principle, however, does not prevent the state from drawing distinctions between different groups of individuals but requires the classifications created bear a rational relationship to a legitimate public purpose." (*People v. Gregori* (1983) 144 Cal.App.3d 353, 358 [192 Cal.Rptr. 555].) Since the use of alcohol is legal and the use of narcotics is illegal, it was rational for the state to attempt to curtail illegal drug use and the jail and prison cost attached thereto through a civil commitment procedure to rehabilitate the addict. While addiction to alcohol may be as great a social problem as addiction to drugs, the use of alcohol is not illegal and the state does not incur the cost of jailing and imprisoning

defendants merely because they use or possess alcohol. As a result, the Legislature acted rationally when it decided that individuals who are addicted to illegal drugs or narcotics are not similarly situated to individuals who are addicted to alcohol. ■ Welfare and Institutions Code section 3051 does not deny Chavez equal protection through failure to include alcohol as a substance that can lead to civil commitment rather than confinement in prison.

## DISPOSITION

The judgment is affirmed.

Benke, J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 12, 2004.