24 Cal.Rptr.3d 834 (2005)
126 Cal.App.4th 1374
The PEOPLE, Plaintiff and Respondent,
v.
Chad RHODES, Defendant and Appellant.
No. A102776.
Court of Appeal, First District, Division One.
February 18, 2005.
Review Denied June 8, 2005.
*838 Matthew Zwerling, Richard Such, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Gerald A. Engler, Assistant Attorneys General, Catherine A. Rivlin, Allen R. Crown, Deputy Attorneys General, for Plaintiff and Respondent.
SWAGER, J.
We conclude in this appeal that the sentence imposed upon defendant of life in prison without the possibility of parole for the second degree murder of a peace officer in the performance of his duties does not offend equal protection principles or constitute cruel and unusual punishment. We therefore affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
Defendant was charged in count one with murder (Pen.Code, § 187),[1] with personal use of a semiautomatic firearm (§ 12022.5, subd. (b)), and personal infliction of great bodily injury upon a peace officer with a firearm (§§ 12022.53, subd. (d), 12022.5, subd. (b)), along with the special circumstance and aggravating factor that the victim was a peace officer engaged in the performance of his duties (§ 190, subds. (a) & (c)(4)); in count two with attempted murder (§§ 187/664), with personal use of a firearm (§§ 12022.5, subd. (b), 12022.53, subd. (d)); in count three with assault with a deadly weapon upon a peace officer (§ 245, subd. (b)), with personal use of a firearm (§ 12022.5, subd. (b)); and in count four with assault with a deadly weapon upon a peace officer (§ 245, subd. (d)(2)), with personal use of a firearm (§ 12022.53, subd. (c)). After 53 days *839 of jury trial but prior to the commencement of jury deliberations, defendant entered a negotiated guilty plea to one count of the lesser included offense of second degree murder with personal use of a firearm, and the lesser included offense of assault with a firearm upon a peace officer.[2] The trial court subsequently imposed a sentence of life without the possibility of parole for second degree murder of a peace officer.
The evidence presented at trial before the plea was entered, considered as it must be in the light most favorable to the judgment (People v. Maury (2003) 30 Cal.4th 342, 396, 133 Cal.Rptr.2d 561, 68 P.3d 1),[3] showed that on the night of January 9, 1999, defendant and some friends drove around Oakland in two cars, a Nissan Maxima and a Chevrolet Caprice, apparently with the objective of retaliating for injuries inflicted during a prior fight. They had been drinking heavily, and firearms were present in both cars. Defendant was in the Chevrolet with three other occupants, and was armed with an assault rifle.
Defendant and his friends in the Chevrolet observed a police vehicle pass them and initiate a pursuit of the Nissan, before they briefly lost sight of both cars. During the police pursuit of the Nissan on Interstate 580 in Oakland, an officer noticed that one of the occupants of the vehicle threw a shotgun out of the window onto the fast lane of traffic near the 38th Avenue exit. The Nissan subsequently crashed and its occupants were apprehended. Officers and evidence technicians arrived at the scene to seize the shotgun and collect evidence.
While the collection of evidence continued, defendant and his friends in the Chevrolet parked above the freeway at an overpass. Defendant left the car, and with his assault rifle fired shots at the officers below on the freeway, killing Officer James Williams and injuring Officer John Oare. In a subsequent interview with the police, defendant stated that he fired at the police vehicles and a wall behind them to frighten the police away from his friends in the Nissan, not to hurt anyone. The defense also adduced evidence that defendant had poor vision, particularly at night.

DISCUSSION

I. The Sentence of Life Without Possibility of Parole as a Violation of Equal Protection and Due Process of Law.
Defendant challenges the constitutionality of the homicide sentencing scheme that punishes second degree murder of a peace officer "while engaged in the performance of his or her duties" with a sentence of life without possibility of parole upon an additional finding of specified facts (§ 190, subd. (c)), while the "more serious offense" of "first degree murder of a non-peace officer or of a peace officer not in the performance of his or her duties and without other `special circumstances'" imposes a lesser sentence of 25 years to life (§ 190, subd. (a)). He points out that he was charged with first degree premeditated murder, but upon entry of a guilty plea to the "less serious" second degree murder offense with personal use of a firearm (§ 12022.5),[4] was "given greater *840 punishment than he would have received if he had been found guilty of the more serious one." Defendant therefore argues that his "sentence was arbitrary, in violation of the constitutional guarantees of due process and equal protection."
"`Guarantees of equal protection embodied in the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution prohibit the state from arbitrarily discriminating among persons subject to its jurisdiction.'" (People v. Chavez (2004) 116 Cal.App.4th 1, 4, 10 Cal.Rptr.3d 556.) "The constitutional guarantee of equal protection of the laws has been defined to mean that all persons under similar circumstances are given `"equal protection and security in the enjoyment of personal and civil rights ... and the prevention and redress of wrongs...."' [Citation.] The concept `"`compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.'"' [Citation.]" (Pederson v. Superior Court (2003) 105 Cal.App.4th 931, 939, 130 Cal.Rptr.2d 289.) "`Under the equal protection clause, "[a] classification `must be reasonable, not arbitrary, and must rest upon some grounds of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'"' [Citations.]" (People v. Wilder (1995) 33 Cal.App.4th 90, 104, 39 Cal.Rptr.2d 247.)
"`The equality guaranteed by the equal protection clauses of the federal and state Constitutions is equality under the same conditions, and among persons similarly situated. The Legislature may make reasonable classifications of persons and other activities, provided the classifications are based upon some legitimate object to be accomplished.' [Citation.]" (People v. Spears (1995) 40 Cal.App.4th 1683, 1687, 48 Cal.Rptr.2d 634.) "`The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.' [Citations.]" (People v. Dial (2004) 123 Cal.App.4th 1116, 1120, 20 Cal.Rptr.3d 573; see also People v. Calhoun (2004) 118 Cal.App.4th 519, 529, 13 Cal.Rptr.3d 166.) "The `similarly situated' prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified." (People v. Nguyen (1997) 54 Cal.App.4th 705, 714, 63 Cal.Rptr.2d 173.) "Persons who are similarly situated must be treated alike. [Citation.] There is, however, no requirement that persons in different circumstances must be treated as if their situations were similar." (People v. McCain (1995) 36 Cal.App.4th 817, 819, 42 Cal.Rptr.2d 779.)
"This initial inquiry is not whether persons are similarly situated for all purposes, but `whether they are similarly situated for purposes of the law challenged.'" (Cooley v. Superior Court (2002) 29 Cal.4th 228, 253, 127 Cal.Rptr.2d 177, 57 P.3d 654.) "`The use of the term "similarly situated" in this context refers only to the fact that "`[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.' ..." ... There is always some difference between the two groups which a law treats in an *841 unequal manner since an equal protection claim necessarily asserts that the law in some way distinguishes between the two groups.'" (People v. Jones (2002) 101 Cal.App.4th 220, 227, 124 Cal.Rptr.2d 10; see also People v. Goslar (1999) 70 Cal.App.4th 270, 277, 82 Cal.Rptr.2d 558.) "The analysis will not proceed beyond this stage if the groups at issue are not `"similarly situated with respect to the legitimate purpose of the law,"' or if they are similarly situated, but receive "`like treatment.'" Identical treatment is not required." (In re Jose Z. (2004) 116 Cal.App.4th 953, 960, 10 Cal.Rptr.3d 842.)
"`If it is determined that the law treats similarly situated groups differently, a second level of analysis is required. If the law in question impinges on the exercise of a fundamental right, it is subject to strict scrutiny and will be upheld only if it is necessary to further a compelling state interest. All other legislation satisfies the requirements of equal protection if it bears a rational relationship to a legitimate state purpose.'" (People v. Gonzales (2001) 87 Cal.App.4th 1, 12-13, 104 Cal.Rptr.2d 247, quoting from People v. Goslar, supra, 70 Cal.App.4th 270, 277, 82 Cal.Rptr.2d 558.)
We find that defendant has failed to demonstrate that two similarly situated groups have been treated in an unequal manner by the sentencing laws. His claim of denial of equal protection is based upon the imposition of different levels of punishment upon defendants convicted of distinctly classified homicides. The particular second degree murder committed by defendant has been accorded different treatment by the Legislature based upon its unique nature and predicate facts. The life without possibility of parole sentence requires not merely a second degree murder of a peace officer in the performance of his or her duties, but may be imposed only if at least one of four additional enumerated facts is found: "(1) The defendant specifically intended to kill the peace officer. [¶] (2) The defendant specifically intended to inflict great bodily injury, as defined in Section 12022.7, on a peace officer. [¶] (3) The defendant personally used a dangerous or deadly weapon in the commission of the offense, in violation of subdivision (b) of Section 12022.[¶] (4) The defendant personally used a firearm in the commission of the offense, in violation of Section 12022.5." (§ 190, subd. (c).) Defendant's second degree murder conviction thus differs in its essential elements from other forms and degrees of murder. He is not in a group that is similarly situated to those convicted of separate homicide offenses. And "`[N]either the Fourteenth Amendment of the Constitution of the United States nor the California Constitution [citations] precludes classification by the Legislature or requires uniform operation of the law with respect to persons who are different.'" (People v. Applin (1995) 40 Cal.App.4th 404, 409, 46 Cal.Rptr.2d 862, quoting from In re Gary W. (1971) 5 Cal.3d 296, 303, 96 Cal.Rptr. 1, 486 P.2d 1201.) Nothing "in the Constitution[] require[s] a State to fix or impose any particular penalty for any crime it may define or to impose the same `proportionate' sentences for separate and independent crimes." (Williams v. Oklahoma (1959) 358 U.S. 576, 586, 79 S.Ct. 421, 3 L.Ed.2d 516.)
Defendant asserts that any first degree murder requires a "more culpable" mental state of deliberation and premeditation, and thus is necessarily a "morally more blameworthy offense" than his second degree murder conviction. He also points out that his "punishment for the lower degree of murder is just as severe" as for a conviction "of the higher degree of the crime" with a finding of a preponderance of mitigating circumstances, and more severe *842 than if he had been "found guilty of first degree murder without a special circumstance." From these bases he argues that "punishing the second degree murder of a peace officer with an `aggravating factor' more harshly than the ordinary first degree murder" is irrational and arbitrary.
However, the comparative gravity of distinctive criminal offenses and the commensurate punishment to be selected for them is not an assessment either defendant or this court is entitled to undertake. "The matter of defining crimes and punishment is solely a legislative function." (People v. Superior Court (Perez) (1995) 38 Cal.App.4th 347, 361, 45 Cal.Rptr.2d 107.) "The Legislature also has the authority to change the penalties, or separate them by degree." (People v. Flores (1986) 178 Cal.App.3d 74, 85, 223 Cal.Rptr. 465.) "Prescribing punishment for various forms of homicide is distinctly within the police power of the states, as is the definition of the elements of crimes and the delineation of their punishments." (People v. Malfavon (2002) 102 Cal.App.4th 727, 738, 125 Cal.Rptr.2d 618.) "Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think." (Williamson v. Lee Optical Co. (1955) 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563; Kasler v. Lockyer (2000) 23 Cal.4th 472, 482, 97 Cal.Rptr.2d 334, 2 P.3d 581.) "`"[S]ubject to the constitutional prohibition against cruel and unusual punishment, the power to define crimes and fix penalties is vested exclusively in the legislative branch." [Citations.]' [Citation.]" (Manduley v. Superior Court (2002) 27 Cal.4th 537, 552, 117 Cal.Rptr.2d 168, 41 P.3d 3; see also People v. Thompson (1994) 24 Cal.App.4th 299, 304, 29 Cal.Rptr.2d 847.) "The judiciary may not interfere with the authority of the Legislature to define crimes and prescribe punishment unless a prescribed penalty is so severe in relation to the crime that it violates the constitutional prohibition against cruel or unusual punishment." (People v. Ruiz (1996) 44 Cal.App.4th 1653, 1662, 52 Cal.Rptr.2d 561; see also People v. Ingram (1995) 40 Cal.App.4th 1397, 1412-1413, 48 Cal.Rptr.2d 256.)
Moreover, defendant is not subject to the greater sentence of life without possibility of parole based solely upon a second degree murder committed without premeditation. Additional aggravating circumstances of his second degree murder conviction were prerequisites to the greater punishment he received: his knowledge or reason to know that the victim was a peace officer in the performance of his duties, and his intent to kill a peace officer or personal use of a firearm in the commission of the offense. (People v. Herrera (2001) 88 Cal.App.4th 1353, 1362, 106 Cal.Rptr.2d 793.) While we agree with defendant that, all other factors being equal, a finding of premeditation and deliberation renders the intent associated with a murder more iniquitous (People v. Rios (2000) 23 Cal.4th 450, 461, 97 Cal.Rptr.2d 512, 2 P.3d 1066), the severity of punishment for a criminal offense is not predicated upon the mental state of the perpetrator alone. Retribution or deterrence, the two primary objectives of criminal punishment, take into consideration many circumstances beyond criminal intent. (See Kansas v. Hendricks (1997) 521 U.S. 346, 362, 117 S.Ct. 2072, 138 L.Ed.2d 501; People v. Burris (2002) 102 Cal.App.4th 1096, 1106, 126 Cal.Rptr.2d 113.) The Legislature has determined in many contexts that firearm offenses are treated more harshly than the same crimes committed by other means in order to deter the use of firearms and save lives, and the imposition of severe punishment upon offenders who kill or injure peace officers serves to promote the societal *843 interest of protecting peace officers engaged in the performance of their duties. (See People v. Corey (1978) 21 Cal.3d 738, 746, 147 Cal.Rptr. 639, 581 P.2d 644; People v. Mason (2002) 96 Cal.App.4th 1, 12, 115 Cal.Rptr.2d 359; People v. Alvarez (2001) 88 Cal.App.4th 1110, 1117, 106 Cal.Rptr.2d 447; People v. Martinez (1999) 76 Cal.App.4th 489, 497-498, 90 Cal.Rptr.2d 517.)
Defendant received the same sentence as may be imposed upon all persons in California who are convicted of second degree murder of a peace officer with a firearm. (See Windham v. Merkle (9th Cir.1998) 163 F.3d 1092, 1106-1107.) The distinct punishment imposed for other degrees and forms of homicide does not offend due process or equal protection principles if a rational basis exists for the statutory scheme. (People v. Wilkinson (2004) 33 Cal.4th 821, 840, 16 Cal.Rptr.3d 420, 94 P.3d 551; People v. Silva (1994) 27 Cal.App.4th 1160, 1168-1169, 33 Cal.Rptr.2d 181; People v. Ordonez (1991) 226 Cal.App.3d 1207, 1237-1238, 277 Cal.Rptr. 382.) Defendant "`does not have a fundamental interest in a specific term of imprisonment or in the designation a particular crime receives.'" (People v. Alvarez, supra, 88 Cal.App.4th 1110, 1116, 106 Cal.Rptr.2d 447.) An equal protection claim of "sentencing disparity" is evaluated "under the rational basis test." (People v. Silva, supra, at p. 1168, 33 Cal.Rptr.2d 181; see also People v. Wilkinson, supra, at p. 838, 16 Cal.Rptr.3d 420, 94 P.3d 551; People v. Alvarez, supra, at p. 1116, 106 Cal.Rptr.2d 447.) "`The decision of how long a particular term of punishment should be is left properly to the Legislature. The Legislature is responsible for determining which class of crimes deserves certain punishments and which crimes should be distinguished from others. As long as the Legislature acts rationally, such determinations should not be disturbed.' [Citation.]" (People v. Wilkinson, supra, at p. 840, 16 Cal.Rptr.3d 420, 94 P.3d 551, quoting from People v. Flores, supra, 178 Cal.App.3d 74, 88, 223 Cal.Rptr. 465.)[5] The state may draw "`distinctions between different groups of individuals'" as long as "`the classifications created bear a rational relationship to a legitimate public purpose.'" (People v. Chavez, supra, 116 Cal.App.4th 1, 4, 10 Cal.Rptr.3d 556.) "`[L]egislative classification is permissible when it is based upon some distinction reasonably justifying differentiation in treatment ...; a classification is not void because it does not embrace within it every other class which might be included.... A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.'" (People v. Silva, supra, at pp. 1168-1169, 33 Cal.Rptr.2d 181.) "`Where ... there are plausible reasons for [the Legislature's] action, our inquiry is at an end.' [Citation.]" (People v. Malfavon, supra, 102 Cal.App.4th 727, 739, 125 Cal.Rptr.2d 618.)
We conclude that a rational basis exists to punish the aggravated form of second degree murder committed by defendant in the same manner as a first degree murder committed without aggravating circumstances. The Legislature reasonably determined that the murder of a peace officer with a firearm is a particularly egregious form of homicide, even absent premeditation or deliberation, that requires the harsh punishment of life without possibility *844 of parole to adequately promote the sentencing objectives of deterrence, protection of the public, and retribution. The increase in the severity of defendant's punishment for the offense of second degree murder of a peace officer, enhanced by his use of a firearm, is neither irrational nor arbitrary, and therefore did not deny defendant equal protection under the law. (People v. Wilkinson, supra, 33 Cal.4th 821, 841, 16 Cal.Rptr.3d 420, 94 P.3d 551; People v. Romo (1975) 14 Cal.3d 189, 196-197, 121 Cal.Rptr. 111, 534 P.2d 1015; People v. McCain, supra, 36 Cal.App.4th 817, 820, 42 Cal.Rptr.2d 779.)

II. The Denial of a Trial on Mitigating Circumstances as a Denial of Equal Protection and Due Process.
Defendant also argues that section 190 violated "his constitutional rights to due process and equal protection" by denying him "the same sort of trial of mitigating and aggravating circumstances and opportunity for a 15 to life sentence which section 190.05 provides for a person who pleads guilty to second degree murder and admits or is found to have a prior prison term for murder." Under section 190, subdivision (c), second degree murder of a peace officer with the "aggravating factor" of personal use of a firearm may be punished by life without possibility of parole. Consideration of mitigating circumstances is not a prerequisite to the enhanced, life without possibility of parole sentence. In contrast, section 190.05 provides that, for a second degree murder, if the murderer has served a prior prison term for murder, "[t]he penalty ... shall be confinement in the state prison for a term of life without the possibility of parole or confinement in the state prison for a term of 15 years to life." (§ 190.05, subd. (a).) Neither of the two optional sentences is given precedence in section 190.05, and punishment is specifically to be decided following a penalty phase trial by a jury upon consideration of aggravating and mitigating circumstances. (People v. Guinn (1994) 28 Cal.App.4th 1130, 1145, 33 Cal.Rptr.2d 791.) Defendant claims that he "was denied equal protection, relative to a defendant who was found guilty of, or pleaded guilty to, second degree murder under section 190.05, in that (1) the punishment for his conviction of second degree murder was fixed at [life without possibility of parole], without the alternative of the ordinary sentence of 15 years to life and (2) he was not afforded a jury trial, or any trial, of the question of whether the aggravating factors outweighed the mitigating." He further argues that the "distinction is not justified by any `compelling state interest.'"
Again, we conclude that the sentence distinction created by the Legislaturebetween a mandatory term of life without possibility of parole for defendant's second degree murder offense, and the option to impose the lesser sentence of 15 years to life for a conviction of second degree murder with a prior prison term for murderhas a rational basis. While defendant claims that "one crime cannot be considered substantially more serious than the other," the crimes have appreciably different elements and we cannot intrude upon the exclusive power of the legislative branch to define crimes and fix penalties. (People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 516, 53 Cal.Rptr.2d 789, 917 P.2d 628.) We find that the Legislature did not act irrationally by classifying the murder of a peace officer with a firearm as the more serious of the two homicide offenses.
We also discern in the distinct characteristics of the two crimes a rational basis for the legislative decision to adopt a mandatory life term for second degree murder of a peace officer with a firearm, but grant *845 discretion for a parole alternative for a violation of section 190.05: the former crime is much more specific in nature, and thus does not lend itself to the need for the exercise of sentencing discretion; the offense of second degree murder with a prior prison term for murder takes into account a more varied category of both current and prior offenses that demands an examination of mitigating and aggravating factors to properly determine the seriousness of the crime and the appropriate punishment. The two groups of second degree murder offenders are not similarly situated with respect to the purposes of the law, and therefore the classification between the two different degrees of punishment they receive is constitutional where a reasonable basis for the distinction exists. (People v. Wilkinson, supra, 33 Cal.4th 821, 840, 16 Cal.Rptr.3d 420, 94 P.3d 551; People v. Floyd (2003) 31 Cal.4th 179, 190, 1 Cal.Rptr.3d 885, 72 P.3d 820; People v. Romo, supra, 14 Cal.3d 189, 196-197, 121 Cal.Rptr. 111, 534 P.2d 1015; In re Jose Z., supra, 116 Cal.App.4th 953, 961, 10 Cal.Rptr.3d 842.)

III. Cruel and Unusual Punishment.
We turn to defendant's complaint that the sentence for his second degree murder offense constitutes cruel and unusual punishment. He argues that the punishment of life without possibility of parole was "disproportionate in [] this case, in violation of the prohibition of cruel and unusual punishment by the United States and California Constitutions." Defendant points out the reference in the record to "substantial mitigating factors" related to both the offense and his background that "on the facts of this particular case" make the sentence "disproportionate to the crime."
"Cruel and unusual punishment is prohibited by the Eighth Amendment to the United States Constitution and article I, section 17 of the California Constitution. Punishment is cruel and unusual if it is so disproportionate to the crime committed that it shocks the conscience and offends fundamental notions of human dignity." (People v. Mantanez (2002) 98 Cal.App.4th 354, 358, 119 Cal.Rptr.2d 756, fns. omitted.) "`A tripartite test has been established to determine whether a penalty offends the prohibition against cruel ... [or] unusual punishment. First, courts examine the nature of the offense and the offender, "with particular regard to the degree of danger both present to society." Second, a comparison is made of the challenged penalty with those imposed in the same jurisdiction for more serious crimes. Third, the challenged penalty is compared with those imposed for the same offense in other jurisdictions. [Citations.] In undertaking this three-part analysis, we consider the "totality of the circumstances" surrounding the commission of the offense. [Citations.]' [Citation.]" (People v. Chacon (1995) 37 Cal.App.4th 52, 63, 43 Cal.Rptr.2d 434; see also People v. Thongvilay (1998) 62 Cal.App.4th 71, 87-88, 72 Cal.Rptr.2d 738.)
"`Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty "out of all proportion to the offense" [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment.' *846 [Citation.]" (People v. Lewis (1993) 21 Cal.App.4th 243, 251, 25 Cal.Rptr.2d 827.) "`Only when the punishment is out of all proportion to the offense and is clearly an extraordinary penalty for a crime of ordinary gravity committed under ordinary circumstances, do the courts denounce it as unusual.' [Citation.]" (Ibid.)
"Our Supreme Court has emphasized `the considerable burden a defendant must overcome in challenging a penalty as cruel or unusual. The doctrine of separation of powers is firmly entrenched in the law of California, and a court should not lightly encroach on matters which are uniquely in the domain of the Legislature. Perhaps foremost among these are the definition of crime and the determination of punishment. While these intrinsically legislative functions are circumscribed by the constitutional limits of article I, section 17, the validity of enactments will not be questioned "unless their unconstitutionality clearly, positively, and unmistakably appears."' [Citation.]" (People v. Kinsey (1995) 40 Cal.App.4th 1621, 1630, 47 Cal.Rptr.2d 769.) "Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be viewed in the light most favorable to the judgment." (People v. Martinez, supra, 76 Cal.App.4th 489, 496, 90 Cal.Rptr.2d 517; see also People v. Mantanez, supra, 98 Cal.App.4th 354, 358, 119 Cal.Rptr.2d 756.)
In our examination of "`the nature of the offense' prong" of the cruel and unusual punishment test, we "consider not only the offense in the abstracti.e., as defined by the Legislaturebut also `the facts of the crime in question.' [Citation.] This entails an examination of the totality of the circumstances surrounding the commission of the offense in the case at bar, including such factors as its motive, the way it was committed, the extent of the defendant's involvement, and the consequences of his acts." (People v. Thompson, supra, 24 Cal.App.4th 299, 305, 29 Cal.Rptr.2d 847; see also People v. Estrada (1997) 57 Cal.App.4th 1270, 1278, 67 Cal.Rptr.2d 596.) To assess the nature of the offender, we look at defendant's "individual culpability in light of his age, prior criminality, personal characteristics, and state of mind." (People v. Crooks (1997) 55 Cal.App.4th 797, 806, 64 Cal.Rptr.2d 236.)
Although some mitigating factors are indicated in the record, particularly related to his personal history, we are persuaded that the extreme seriousness associated with the offense negates his claim of cruel and unusual punishment. With an assault rifle defendant opened fire from an overpass at a group of police officers and evidence technicians engaged in the entirely non-threatening task of collecting evidence on the freeway below him. The unprovoked shooting was at best criminally negligent, or at worst, committed with the sinister objective of killing a police officer. Defendant acted on his own, apparently without encouragement or assistance from anyone else. The impact of the indiscriminate shooting was to leave one officer dead and another wounded. Finally, defendant has made no showing that the challenged penalty is far in excess of that imposed in California for less serious crimes or for the same offense in other jurisdictions. Under the egregious circumstances of this case, we do not consider the penalty of life in prison without the possibility of parole so disproportionate to the gravity of the offense and defendant's degree of culpability as to constitute cruel and unusual punishment. (People v. Thompson, supra, 24 Cal.App.4th 299, 304-307, 29 Cal.Rptr.2d 847.)

*847 DISPOSITION
Accordingly, the judgment is affirmed.
We concur: MARCHIANO, P.J., and STEIN, J.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] In exchange for the guilty plea, the prosecution dismissed counts three and four.
[3] We need only recite the evidence that constitutes the basis for the guilty plea in summary form as necessary to resolution of the issues raised by defendant that challenge the sentence imposed upon him.
[4] One of the specified facts "charged and found true" that justifies a sentence of life without the possibility of parole under section 190, subdivision (c) is, "(4) The defendant personally used a firearm in the commission of the offense, in violation of Section 12022.5."
[5] In People v. Flores, supra, 178 Cal.App.3d 74, 88, 223 Cal.Rptr. 465, a defendant convicted of attempted second degree murder asserted he had been denied equal protection because he had received the same sentence as someone convicted of attempted first degree murder. The court found a rational basis to punish all attempted murders alike.