Filed 1/26/23  P. v. Lo CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>CAMDEN LO,<br><br>　　　Defendant and Appellant. | A165467<br><br><br>(Solano County<br>Super. Ct. No. FCR328007) |

Defendant Camden Lo appeals from a postjudgment order resentencing him to 15 years to life with the possibility of parole for the second degree murder of his estranged wife, Wen Ying Lo.  After defendant filed a timely notice of appeal, appellate counsel was appointed to represent him.  Appointed counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*People v. Wende*) in which he raises no issue for appeal and asks this court for an independent review of the record.  (*People v. Kelly* (2006) 40 Cal.4th 106, 124 (*People v. Kelly*).)  Counsel attests that defendant was advised of his right to file a supplemental brief in a timely manner, but he declined to exercise this right.

We have examined the entire record in accordance with *People v. Wende*.  For reasons set forth *post*, we agree with counsel no arguable issue exists on appeal.  Accordingly, we affirm the trial court's resentencing order.

1

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In February 2017, defendant was involved in contentious divorce settlement proceedings with his estranged wife, Wen Ying Lo. The pair had a child, Stanley, in high school. Stanley, who also had a contentious relationship with his mother, lived in the family home in the San Francisco Bay Area with defendant. Wen Ying, after moving out of the family home, went to Southern California to live with her sister and Stanley's siblings.

On February 9, 2017, Wen Ying returned to the Bay Area to attend a court settlement conference scheduled for the next day. That evening, Wen Ying called 911, reporting that she was locked out of the family home despite having a right to spend the night there. Wen Ying eventually left but returned a few hours later when Stanley and defendant were home. She called Stanley, yelling angrily that she wanted to come inside to get her belongings. Defendant told Stanley not to let Wen Ying into the home because he was afraid of her. Stanley gave his phone to defendant. The parents argued. After the call ended, Wen Ying remained outside, yelling for about 30 minutes.

Although the next day's settlement conference was contentious, Wen Ying's divorce lawyer later testified that defendant was calm and not angry. It was agreed Wen Ying would return to the family home at 4:00 p.m. to retrieve her belongings. Wen Ying asked her lawyer to accompany her, but he refused. Instead, the parties agreed only Stanley would be home when she arrived.

After school, Stanley went to his family's restaurant as usual, arriving about 3:30 p.m. Stanley testified that defendant seemed upset and

---

[1] The facts relating to defendant's crime are taken from our prior opinion in this case. (*People v. Lo* (Dec. 7, 2021, A159307) [nonpub. opn.].)

mentioned " 'losing in court.' "  Just after 4:00 p.m., Wen Ying called Stanley. She was angry that he was not home to let her in.  Stanley, who was eating, told defendant, who reluctantly left for the house five or ten minutes later. Stanley then left for the house 10 to 20 minutes later, after finishing his meal.  When Stanley arrived, he saw his mother's car but not his father's. Less than a minute later, defendant pulled up, crying hysterically.  He told Stanley that he killed Wen Ying and not to go into the garage.  Stanley nonetheless went into the garage and found his mother on the floor with a knife on top of her body.

Defendant turned himself in later that day.  A subsequent autopsy of Wen Ying revealed a fatal stab wound to her left chest, two nonfatal stab wounds to her upper abdomen, a nonfatal stab wound to her left leg, and a cut on her finger.  Defendant had cuts and bruises on his hands that could have been defensive or offensive wounds and an abrasion on his left chest consistent with blunt force trauma.

On August 22, 2019, a jury convicted defendant of first degree murder (Pen. Code, § 187, subd. (a))[2] and found true the allegation that he personally used a deadly weapon, a knife, during the murder (§ 12022, subd. (b)(1)).  The trial court sentenced defendant to a prison term of 25 years to life.

On December 7, 2021, this court issued a nonpublished opinion in case No. A159307 in which we reduced defendant's conviction from first to second degree murder after concluding the jury's finding of premeditation and deliberation lacked substantial evidence.  We then affirmed the judgment as modified and remanded the matter to the trial court for resentencing.

---

[2] Unless otherwise stated, all statutory citations are to the Penal Code.

On May 5, 2022, the trial court resentenced defendant to 15 years to life with the possibility of parole, staying the one-year sentence for the deadly weapon enhancement.  This appeal followed.

## DISCUSSION

As mentioned *ante*, neither appointed counsel nor defendant has identified any actual issue for our review.  Upon our own independent review of the record, we agree no issue exists.  (*People v. Wende, supra*, 25 Cal.3d 436.)  Defendant, represented by competent counsel, received a prison term of 15 years to life with the possibility of parole on the second degree murder count.  The court then stayed the one-year sentence defendant received for the enhancement under Penal Code section 12022, subdivision (b)(1).  The trial court also awarded defendant 1,911 days of credit for time served and ordered him to pay a $1,000 restitution fine (Pen. Code, § 1202.4, subd. (b)), a $1,000 fine suspended unless parole is revoked (Pen. Code, § 1202.45), a $40 court security fee (Pen. Code, § 1465.8), and a $30 criminal conviction assessment (Gov. Code, § 70373).  This sentence, including the fines, fees, and assessments, was lawfully imposed.  Under California law, the punishment for all persons convicted of second degree murder is 15 years to life.  (Pen. Code, § 190, subd. (a).)  While there are exceptions for defendants who commit second degree murder under special circumstances that serve to lengthen this term, none serve to reduce it.  (Pen. Code, §§ 190, subds. (b)–(d), 190.05; see *People v. Rhodes* (2005) 126 Cal.App.4th 1374, 1386–1387 ["Defendant received the same sentence as may be imposed upon all persons in California who are convicted of second degree murder of a peace officer with a firearm. . . . ' "The decision of how long a particular term of punishment should be is left properly to the Legislature. . . .  As long as the Legislature acts rationally, such determinations should not be disturbed" ' "].)

Finally, while defendant was informed by counsel of his right to file a supplemental brief in this appeal, he declined to do so.  Under these circumstances, and based upon our independent review of this case, we find no grounds for reversal.

Having ensured defendant has received adequate and effective appellate review, we affirm the trial court's order.  (*People v. Kelly, supra,* 40 Cal.4th at pp. 112–113.)

## DISPOSITION

The judgment is affirmed.

_____
Jackson, P. J.


WE CONCUR:


_____
Simons, J.


_____
Burns, J.


A165467/*People v. Camden Lo*